UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEATHER FAIRFIELD, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DCD AUTOMOTIVE HOLDINGS, INC., <br><br> Defendant. | Case No. 22-cv-11977-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 June 26, 2023

**I.  Introduction**

Plaintiff Heather Fairfield ("Fairfield") has filed this purported class action lawsuit against Defendant DCD Automotive Holdings, Inc. ("DCD") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Counts I and II). D. 1. DCD now moves to compel arbitration and to dismiss or stay this case in favor of arbitration. D. 8. For the reasons stated below, the Court ALLOWS the motion.

**II. Standard of Review**

When ruling on a motion to compel arbitration, the Court "draw[s] [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018). "[D]istrict courts should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir.

1

2021). Accordingly, the "[C]ourt must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Id.

### III.  Factual Background

The following facts are drawn from Fairfield's complaint, D. 1, the declarations filed with DCD's motion, D. 8-2, the declaration filed with Fairfield's opposition, D. 12-1, the declaration filed with DCD's reply, D. 19-1, and accompanying documents.

#### A.  Fairfield's 2015 Car Purchase

DCD is a holding company that owns and operates several car dealerships. D. 1 ¶ 4; D. 8-2 ¶ 3. One of DCD's wholly owned subsidiaries operates under the brand name "Boch Honda." D. 8-2 ¶ 3. On or about September 7, 2015, Fairfield purchased a new car from a Boch Honda in Norwood, Massachusetts and executed a number of documents. Id. ¶¶ 9, 12–15; D. 8-4; D. 12-1 ¶ 4.

First, Fairfield executed the Motor Vehicle Purchase Contract ("MVPC") which provided for Fairfield's purchase of a new car. D. 8-4. In relevant part, the MVPC requires that:

> [a]ny controversy or dispute arising out of or relating in any way to this MVPC, including without limitation the applicability of this arbitration clause and the validity of the MVPC, shall be resolved by neutral binding arbitration. . . . PURCHASER will not have the right to participate in a class action or any other collective proceeding against DEALER. Only a court, and not the arbitrator, can determine the validity of this class action waiver. . . . It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court, including the right to a jury trial, and that an arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act.

Id. at 2. In calculating the price of Fairfield's purchase, the MVPC also lists a $2044 "Serv Cont[ract]" that Fairfield purchased from Boch Honda by executing the Vehicle Services Contract registration form ("VSC"). D. 8-2 ¶ 13; D. 8-4 at 1. The VSC also contains an arbitration

provision and incorporates by reference a Coverage Booklet that Fairfield received at the time of her purchase. D. 8-2 ¶ 13. In relevant part, the VSC provides:

> **this Contract contains a binding arbitration provision which may be enforced by the parties to this Contract.** This Contract provides that all disputes between you and us (or otherwise arising out of or relating to this Contract) will be resolved by **binding arbitration**. You thus **give up your right to go to court** to assert or defend your rights under this Contract . . . . For more details, please review the provisions under "Arbitration and Other Matters Concerning Disputes" in your Coverage Booklet . . . .

D. 8-5 (emphasis in original). The Coverage Booklet further provides that "any claim or controversy arising out of or relating to [this Contract], or to its breach, shall be settled by binding arbitration administered by the American Arbitration Association (the "AAA") in accordance with the rules and provisions of its most appropriate dispute resolution program then in effect." D. 8-6 at 10. The Coverage Booklet also contains a class action waiver: "**[i]n no event will you have the right to participate in a class action or any other collective proceeding against us. Only a court, and not arbitrators, can determine the validity of this class action waiver.**" Id. (emphasis in original).

Finally, Fairfield executed the Retail Installment Sales Contract ("RISC"), D. 8-7, which provided financing for Fairfield's car purchase from seller-creditor Boch Honda. In the RISC, Fairfield agreed to be contacted by Boch Honda for certain purposes:

> You agree that we may try to contact you in writing, by email or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

Id. at 4.

### B. DCD's Telemarketing Calls

Fairfield's TCPA claims arise out of telemarketing calls that she allegedly received from Boch Honda or DCD, encouraging her to trade her car in at the dealership and buy a new car. D. 1 at ¶¶ 4, 22–27 (alleging prerecorded telephone calls from Boch Honda); D. 12-1 ¶¶ 2–6 (averring that Fairfield received robocalls from DCD). When Fairfield asked her local Boch Honda dealership to stop the calls, she was informed that "the local dealership has no control over them" and that the calls were sent by the "marketing department." D. 1 ¶ 35; see D. 12-1 ¶ 9. DCD's general manager avers that any calls Fairfield received from "DCD/Boch" were "service reminder call[s]" regarding recommended service on the car she purchased in 2015. D. 8-2 ¶ 19; D. 19-1 ¶¶ 7–8. DCD asserts that Fairfield consented to receiving such "service reminder call[s]" when she signed the RISC. D. 8-2 ¶ 19; D. 19-1 ¶ 11.

## IV. Procedural History

Fairfield filed this action on November 20, 2022, D. 1. DCD now moves to compel arbitration and dismiss this action, or alternatively, to stay the action pending arbitration. D. 11. The Court heard the parties on the pending motion and took the matter under advisement. D. 21.

## V. Discussion

The Federal Arbitration Act ("FAA") "reflects Congress's intent to create a 'liberal federal policy favoring arbitration.'" Air-Con, 21 F.4th at 173 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)). A party seeking to compel arbitration must generally demonstrate (1) "that a valid agreement to arbitrate exists; (2) that the movant is entitled to invoke the arbitration clause; (3) that the other party is bound by that clause; and (4) that the claim asserted comes within the clause's scope." McKenzie v. Brannan, 19 F.4th 8, 15 (1st Cir. 2021) (internal citation and quotation marks omitted). Where there is "a clear and unmistakable delegation of arbitrability issues," however, the Court's inquiry is limited to whether a valid arbitration

agreement exists. Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 28 (1st Cir. 2021) (citing Henry Schein, Inc. v. Archer & White Sales, Inc., __ U.S. __, 139 S. Ct. 524, 530 (2019)).

DCD asks the Court to dismiss this action and compel arbitration of Fairfield's claims. D. 8 at 2; D. 9 at 20. DCD asserts that the parties have delegated all arbitrability issues to the arbitrator, such that this Court may only consider whether a valid arbitration agreement exists. D. 9 at 10–14; D. 19 at 2–4. In opposition, Fairfield does not contest whether a valid arbitration agreement exists between Fairfield and some party (Boch Honda or CostGuard), but instead argues that DCD lacks standing to enforce any arbitration agreement or delegation clause therein. D. 12 at 12–13. Accordingly, the Court must first address whether Fairfield agreed to delegate the issue of DCD's standing to the arbitrator.

### A. Delegation of Arbitrability to the Arbitrator

In Apollo, the First Circuit held that whether a non-signatory assignee could enforce an arbitration agreement was a matter delegated to the arbitrator, because the parties agreed to arbitration under the International Chamber of Commerce rules which provided that the arbitrator should decide issues "concerning the existence or validity of the agreement to arbitrate." Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989); see Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009). District courts must respect the parties' delegation of threshold arbitrability questions to an arbitrator, if it is supported by "'clear and unmistakable' evidence." Henry Schein, 139 S. Ct. at 529–30 (rejecting the "wholly groundless" exception that some Circuits had applied to this rule).

Here, DCD argues that arbitrability issues are delegated to the arbitrator under the VSC and Coverage Booklet's arbitration provisions, which provide for arbitration under the American Arbitration Association ("AAA") rules. D. 9 at 12–13. Moreover, the MVPC provides that "[a]ny controversy or dispute arising out of or relating in any way to this MVPC, including without

5

limitation the applicability of this arbitration clause and the validity of the MVPC, shall be resolved by neutral binding arbitration." D. 8-4 at 2. Such provisions and such language is "clear and unmistakable" evidence of the delegation of this determination to the arbitrator. As revealed by some of the cases cited by the parties, courts within this district have come to different conclusions regarding whether a delegation of arbitrability prevents the judge from determining whether a non-signatory to the arbitration agreement has standing to enforce notwithstanding Apollo and Henry Schein. Compare Symonds v. Credico (USA) LLC, No. 20-cv-10192-ADB, 2020 WL 7075028, at *5 (D. Mass. Dec. 3, 2020) (concluding that dispute as to whether non-signatories could enforce arbitration agreement was delegated to arbitrator), with Tissera v. NRT New Eng., 438 F. Supp. 3d 115, 122–125 (D. Mass. 2020) (resolving whether non-signatories could enforce arbitration agreement despite delegation of arbitrability). Although the Court acknowledges the "logical conundrum" created by referring to the issue to an arbitrator where Fairfield was a signatory to the agreement but DCD was not, it is nevertheless consistent with the holding in Henry Schein regarding the limits of the Court's authority when there is a delegation clause. See In re Intuniv Antitrust Litig., No. 16-cv-12653-ADB, 2021 WL 517386, at *6–8 (D. Mass. Feb. 11, 2021) (quoting De Angelis v. Icon Ent. Grp. Inc., 364 F. Supp. 3d 787, 796–97 (S.D. Ohio 2019)).

Fairfield contests whether DCD can enforce any delegation or arbitration provision because DCD was not a party to the VSC. D. 12 at 8–9, 16–17. A non-party, however, to an arbitration agreement can enforce same if it was an intended third-party beneficiary. Gagne v. Stallion Exp., LLC, No. 4:22-cv-40008-TSH, 2022 WL 17658121, at *2, 4 (D. Mass. Sept. 15, 2022). The test for such status is whether the contracting parties (i.e., the signatories to the arbitration agreement) clearly intended to confer a benefit on a non-signatory, DCD. Id. at *2.

Without deciding the issue, there appears to be a basis to conclude that DCD is an intended beneficiary of the agreement to arbitrate here.  First, DCD is the owner and operator of Boch Honda, the signatory to the VSC.  See D. 8-5 (stating that arbitration provision "may be enforced by the parties to this Contract" and showing signature of Boch Honda's representative).  The RISC and MVPC indicate that the VSC is part of the total purchase price for the motor vehicle that Fairfield purchased.  D. 1 ¶ 4.  Fairfield argues that only herself, CostGuard and CostGuard's insurer could enforce the arbitration clause, because the Coverage Booklet arbitration clause is limited post-termination to claims against "an insurer backing [CoastGuard's] [sic] obligations." D. 12 at 9 (alteration in original) (quoting D. 8-6 at 11).  A plain reading of the full clause in context shows that it clarifies the rights of the insurer, rather than limiting the parties who can enforce the arbitration clause post-termination.  D. 8-6 at 11 (providing that provisions regarding arbitration "survive termination of this Contract").  Second, the language of the VSC contemplates that there may be disputes with third parties (given the language that it relates to "all disputes between you and us . . . (or otherwise arising out of or relating to this Contract"), D. 8-2 ¶ 13, and DCD is now such a third party.  Third, DCD bought the VSC from CostGuard, resold it to Fairfield and is obligated to honor her services claims under it for her vehicle.  D. 8-2 ¶ 13.  For at least these reasons, there arguably is a basis here to conclude that DCD is an intended beneficiary of the agreement to arbitrate, which included delegation of arbitrability to the arbitrator.  See In re Intuniv Antitrust Litig., 2021 WL 517386, at *5–6; Symonds, 2020 WL 7075028, at *5–6; Visibility Corp. v. Schilling Robotics, LLC, No. 10-cv-12280-JGD, 2011 WL 5075816, at *4 (D. Mass. Oct. 25, 2011) (applying Apollo and concluding that the issue of non-signatories being able to invoke the

arbitration agreement was for the arbitrator to resolve).[1]

Accordingly, the Court concludes that the matter, including all arbitrability issues including but not limited to the issue of DCD's standing to enforce the arbitration agreement, be referred to the arbitrator.

### B.   Enforceability of Class Action Waiver

DCD further seeks to arbitrate on an individual basis and to enforce the class action waivers in the MVPC and VSC. D. 9 at 19. The MVPC and VSC explicitly commits any validity challenge to the class action waiver to the Court. D. 8-4 at 2 (providing that "[o]nly a court, and not the arbitrator, can determine the validity of this class action waiver"); D 8-6 at 10 (same). In her opposition, Fairfield does not raise any arguments specific to the validity of the class action waivers at issue. See generally D. 12. Moreover, any challenge to the enforceability of class action waivers on state law public policy grounds is preempted by the FAA. Concepcion, 563 U.S. at 352; see, e.g., Beck v. Vision Serv. Plan Ins. Co., 600 F. Supp. 3d 145, 151 (D. Mass. 2021) (citing Concepcion for holding that "arbitration clauses containing class action waivers are enforceable under the FAA, regardless of whether they violate a state's public policy"). Should the arbitrator decide that the TCPA claims are arbitrable, the arbitration will proceed on an individual basis.

---

[1] To the extent that Fairfield relies upon Barbosa v. Midland Credit Mgmt., Inc., 981 F.3d 82, 93, n.13 (1st Cir. 2020) for the proposition that "a presumption" applies "that courts (instead of arbitrators) resolve gateway disputes about whether a particular arbitration clause binds parties in a particular case, especially when the dispute centers on whether 'an arbitration contract binds parties that did not sign the agreement,'" id. (citation omitted), that applies only in the absence of clear and unmistakable evidence that the parties to the agreement intended to allow the arbitrator to decide "whether the parties attempting to enforce the arbitration provision had the requisite authority to do so." Id. As discussed above, such is not the case here.

### C. Stay of Proceedings

The final issue to resolve is whether the Court should stay this action pending arbitration or dismiss the action because both of Fairfield's TCPA claims may be subject to arbitration. See Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 313 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019) (citation omitted). Under the circumstances presented, the Court will stay proceedings pending the arbitrability determination by the arbitrator. See McKenzie v. Brannan, 496 F. Supp. 3d 518, 540 (D. Me. 2020) (finding that stay was "more sensible" where court would address outstanding issue if arbitral body concluded that case was not arbitrable), vacated on other grounds, 19 F.4th 8 (1st Cir. 2021). If the arbitrator determines that the claims are arbitrable, the Court will dismiss this action without prejudice.

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS DCD's motion to compel arbitration, D. 11, and stays the proceedings pending the outcome of an arbitrability determination. Accordingly, counsel for the parties are ORDERED to file a joint status report by July 26, 2023 and every thirty (30) day thereafter regarding the status of the arbitration.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

9